131 Nev., Advance Opinion 44

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| C. NICHOLAS PEREOS, LTD.,<br>Appellant,<br>vs.<br>BANK OF AMERICA, N.A.,<br>Respondent. | No. 61553<br><br>**FILED**<br><br>JUL 02 2015<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY S. Young<br>DEPUTY CLERK |

Appeal from a district court summary judgment in a tort action. Second Judicial District Court, Washoe County; Janet J. Berry, Judge.

*Reversed and remanded.*

C. Nicholas Pereos, Ltd., and C. Nicholas Pereos, Reno, for Appellant.

Poli & Ball, P.L.C., and Michael N. Poli and Jody L. Buzicky, Las Vegas, for Respondent.

---

BEFORE HARDESTY, C.J., PARRAGUIRRE and CHERRY, JJ.

*OPINION*

By the Court, HARDESTY, C.J.:

NRS 104.4406 regulates the relationship between a bank and its customers concerning losses sustained due to unauthorized activity in the customer's bank account. Generally, a customer "must exercise reasonable promptness" in examining a bank statement and within 30 days notify the bank of any unauthorized transactions. NRS 104.4406(3), 4(b).

SUPREME COURT
OF
NEVADA

(O) 1947A

11/6/15: Corrected per letter to publishers. CT

15-20161

Because genuine issues of material fact exist in this case regarding the manner of delivery of bank statements, the contents of online and received-in-branch statements, and the bank's exercise of due care in paying certain unauthorized transactions, we conclude that the district court erred in granting summary judgment. We further conclude that unauthorized account transactions that occur within the one-year period before the customer gives notice to the bank are not time-barred under NRS 104.4406(6)'s one-year period of repose because the statute does not differentiate between a single forgery and multiple forgeries by the same wrongdoer. Therefore, the one-year period of repose begins to run with each successive forgery.

## FACTS AND PROCEDURAL HISTORY

Mary Williams, a long-time employee of appellant, the C. Nicholas Pereos, Ltd., law firm, was a signator on the firm's operating account with respondent Bank of America. In September 2006, the firm's solo practitioner, C. Nicholas Pereos, removed Williams as a signator on the account, leaving Pereos as the sole signator. Pereos told Williams to let the Bank of America account "run itself out" to cover any outstanding checks, but he never took any action to affirmatively close the account.

In 2010, Pereos discovered that Williams had been embezzling money since 2006. Despite being removed as a signator on the account, Williams deposited checks made out to Pereos, Ltd. into the Bank of America account and would then write and sign checks for her own personal use. Pereos notified the bank of the unauthorized transactions on January 28, 2010. The next month, Pereos, Ltd. filed a complaint against Bank of America based on Williams' use of unauthorized signatures to withdraw funds from the account from 2006 to 2010. When it was discovered that Williams had enrolled the Pereos, Ltd. account in

online banking and the bank statements had not been mailed, Pereos amended the complaint to include an allegation that Bank of America had failed to make Pereos, Ltd.'s statements available as required by NRS 104.4406(1).

Bank of America moved to dismiss the amended complaint, or alternatively for summary judgment, on the ground that Pereos, Ltd.'s claims for unauthorized transactions were time-barred either because they were not reported by Pereos, Ltd. within 30 days under NRS 104.4406(4)(b) or within the one-year period of repose under NRS 104.4406(6). The bank argued that, notwithstanding Pereos, Ltd.'s contention that the account statements were not mailed to it, Pereos' deposition testimony revealed that Pereos had on occasion personally picked up some of Pereos, Ltd.'s bank account statements from Bank of America in 2006, 2007, and 2008. The bank attached copies of the account's statements to its motion and argued that the "[u]nauthorized transactions . . . were contained in the bank statements that were made available to [Pereos]." In opposition, Pereos, Ltd. argued that the statements he obtained were insufficient to provide it with notice of the unauthorized signatures as they "were only a single page or two-page document . . . that showed check numbers and the amount of the check, and balances. Nothing more[.]" Moreover, he contended that the statements were insufficient because they did not contain a copy of the canceled checks. Pereos also argued that his claims for unauthorized checks cashed within the year preceding his notification to the bank were not time-barred. Conversely, Bank of America argued that, because the same wrongdoer committed all of the wrongful transactions, all claims

were time-barred by Pereos, Ltd.'s failure to give the bank notice within 30 days after receiving the account statements.

The district court granted summary judgment in favor of Bank of America, finding that it was irrelevant whether Pereos, Ltd. received copies of the checks because NRS 104.4406(1) does not require the inclusion of check images. Moreover, the district court found that there was "no dispute that the bank statements received by [Pereos] contained item numbers, amounts, and dates of payment," and thus, the account statements Pereos received were sufficient to notify him of the unauthorized activity on the firm's account. Accordingly, all claims were time-barred under NRS 104.4406(4)(b) and NRS 104.4406(6). This appeal followed.

## DISCUSSION

Nevada's version of the Uniform Commercial Code is codified in NRS Chapters 104 and 104A. *See* NRS 104.1101. Article 4, located at NRS 104.4101-.4504, deals with bank deposits and collections, and, specific to this action, NRS 104.4406 regulates the relationship between banks and bank customers concerning unauthorized activity in a customer's bank account. *See also* U.C.C. § 4-406 (2002). Generally, the statute absolves a bank of liability for payment on an unauthorized transaction when it provides the customer with information that would allow the customer to identify any unauthorized transactions, such as an account statement, and the customer then fails to timely act in response to unauthorized transactions reflected therein.[1] *See Prestridge v. Bank of*

---

[1]NRS 104.4406, in its entirety, reads

*continued on next page...*

 

*...continued*

1. A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount and date of payment.

2. If the items are not returned to the customer, the person retaining the items shall either retain the items or, if the items are destroyed, maintain the capacity to furnish legible copies of the items until the expiration of 7 years after receipt of the items. A customer may request an item from the bank that paid the item, and that bank must provide in a reasonable time either the item or, if the item has been destroyed or is not otherwise obtainable, a legible copy of the item.

3. If a bank sends or makes available a statement of account or items pursuant to subsection 1, the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

4. If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by subsection 3,

*continued on next page...*

*...continued*

the customer is precluded from asserting against the bank:

(a) His or her unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and

(b) His or her unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank.

5. If subsection 4 applies and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with subsection 3 and the failure of the bank to exercise ordinary care contributed to the loss. If the customer proves that the bank did not pay the item in good faith, the preclusion under subsection 4 does not apply.

6. Without regard to care or lack of care of either the customer or the bank a customer who does not within 1 year after the statement or items are made available to him or her (subsection 1) discover and report his or her unauthorized signature or any alteration on the item, is precluded from asserting against the bank the unauthorized signature or the alteration. If there is a preclusion under this subsection, the payor bank may not recover for breach of warranty

*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

*Jena*, 924 So. 2d 1266, 1270 (La. Ct. App. 2006) (discussing analogous Louisiana statute).

Thus, once the customer is provided with the necessary account information, the customer must "exercise reasonable promptness" in examining the information and notifying the bank of any unauthorized transactions. NRS 104.4406(3). Failure to do so may limit the bank's liability for the unauthorized transactions contained in the information and also for any others made by the "same wrongdoer" that occur before the bank receives notice, depending on whether the bank exercised ordinary care in making the payments. NRS 104.4406(4), (5). Regardless of fault, however, a customer is barred from asserting any claims with respect to an unauthorized transaction more than one year after the bank made the information available to the customer. NRS 104.4406(6).

Here, Pereos, Ltd. argues that summary judgment was inappropriate because genuine issues of material fact remain as to (1) whether the account statements were sufficient to give notice of the unauthorized activity on its account so as to trigger its duty to examine the statements for and notify the bank of any unauthorized activity; and (2) even if its duty was triggered, whether its claims concerning payments made within the one-year period before it notified the bank of the unauthorized activity were time-barred.

This court reviews a district court's order granting summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d

---

...*continued*

       under NRS 104.4208 with respect to the unauthorized signature or alteration to which the preclusion applies.

1026, 1029 (2005). Summary judgment is proper if the pleadings and all other evidence on file demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.* When deciding a summary judgment motion, all evidence must be viewed in a light most favorable to the nonmoving party. *Id.* General allegations and conclusory statements do not create genuine issues of fact. *Id.* at 731, 121 P.3d at 1030-31.

Additionally, statutory interpretation is a question of law that this court reviews de novo. *Consipio Holding, BV v. Carlberg*, 128 Nev., Adv. Op. 43, 282 P.3d 751, 756 (2012). "When a statute is clear and unambiguous, this court gives effect to the plain and ordinary meaning of the words and does not resort to the rules of construction." *Id.* When interpreting a statute, "this court considers the statute's multiple legislative provisions as a whole." *Leven v. Frey*, 123 Nev. 399, 405, 168 P.3d 712, 716 (2007). We will not interpret a statute in a way that would "render any part of [the] statute meaningless." *Id.*

*Summary judgment is inappropriate because a genuine issue of material fact remains as to whether the account statements Bank of America provided to Pereos were sufficient to trigger Pereos, Ltd.'s duty to act*

To trigger a customer's duty to examine its account for unauthorized account activity, a bank may either (1) return or make available copies of the canceled checks to the customer, or (2) furnish an account statement to the customer. NRS 104.4406(1). If copies of canceled checks are not returned, the account statement must provide the customer with sufficient information for "the customer reasonably to identify the items paid" on the account. NRS 104.4406(1). This requirement is met "if the item is described by item number, amount and date of payment." *Id.*

This "safe harbor" rule permitting banks to furnish account statements to customers that contain the item number, amount, and date of payment in lieu of providing customers with copies of canceled checks was intended to reduce the costs associated with check collection. *See* U.C.C. § 4-406 cmt. 1 (2002). The drafters reasoned that this information is generally sufficient to notify "[a] customer who keeps a record of checks written" of any unauthorized signatures, while also recognizing that this information may be insufficient for a customer who does not "utilize [a] record-keeping method." *Id.* The drafters explained that "accommodating customers who do not keep adequate records is not as desirable as accommodating customers who keep more careful records," nor does it reduce the cost of the check collection system to all customers. *Id.* Therefore, the drafters placed the burden on the bank's customers to remain reasonably aware of the activity on their accounts. *See id.* Accordingly, if the customer "should reasonably have discovered the unauthorized payment" from the information provided, the customer must promptly notify the bank. NRS 104.4406(3).

Here, there are genuine issues of material fact as to the manner of delivery and the content of the "statements" that Bank of America contends were mailed to Pereos or delivered to him during his branch visits. Pereos, Ltd. disputes the fact that Bank of America mailed bank statements to its office location during the time in question. While Bank of America supplied copies of the bank statements to the district court, it appears from the record that the bank did not actually mail those statements to Pereos, Ltd., but rather, they were made available online at the direction of Williams. It is not clear from the record the extent of Williams' authority and when she converted delivery of the bank

statements to an online format. Nonetheless, Bank of America continues to maintain that, regardless of the method of delivery, Pereos received some of the statements during his visits to the bank between September 2006 and January 2008, the contents of which would have put him on notice of the unauthorized activity. And even though Pereos concedes that the statements he received contained the item number and amount for each item paid, he maintains that they did not contain the date of payment. Because genuine issues of material fact remain as to the delivery method of the bank statements and whether the statements Pereos received during his visits to Bank of America contained the statutory safe harbor information to discover the unauthorized transactions, we conclude that the district court erred in granting summary judgment under the 30-day rule in NRS 104.4406(4)(b).

*The district court erred in dismissing Pereos, Ltd.'s claims for embezzlement that occurred between January 2009 and January 2010[2]*

Pereos, Ltd. next argues that, even if the statements triggered its duty to identify and promptly notify Bank of America of the unauthorized activity, its claims for checks forged within the year preceding giving notice to the bank are not time-barred by the one-year deadline. Bank of America argues that all of Pereos, Ltd.'s claims are barred pursuant to NRS 104.4406(4)(b), because payment on all of the acts

---

[2]Pereos acknowledged obtaining a statement in a Bank of America branch in September 2006, occasional statements between late 2006 and early 2007, and a statement in January 2008. Pereos argues that he received no statements after January 2008, and we thus address this time period separately. *See* NRS 104.4406(6) (providing that any customer who does not report unauthorized activity to the bank within one year after the statement giving notice of that activity is made available to it is precluded from recovering on that activity against the bank.)

of forgery, committed by the same wrongdoer, occurred after Pereos, Ltd. had 30 days to examine the first account statement containing forged transactions and before Pereos, Ltd. reported the unauthorized transactions to Bank of America. To resolve this issue, we examine the interplay between NRS 104.4406's subsections 4, 5, and 6, to determine whether Pereos, Ltd.'s claims for unauthorized payments made from its bank account during the one-year period before January 2010 are statutorily barred.

Distinguishing between a single forgery and multiple forgeries by the same wrongdoer, subsection 4 provides that a customer who fails to exercise the reasonable diligence required in subsection 3 is precluded from asserting a claim against the bank for a single forged item if the bank "proves that it suffered a loss" from that failure, NRS 104.4406(4)(a), or for multiple forged items "by the same wrongdoer . . . paid in good faith by the bank[,] if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration," but after the customer had 30 days to review the account statement. NRS 104.4406(4)(b). These preclusions are subject to exception for the bank's failure to exercise due care, however: "[i]f . . . the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss," the loss is to be divided between the bank and the customer. NRS 104.4406(5). And if the bank pays the item without good faith, subsection 4's prohibitions against the customer asserting a claim are inapplicable altogether. *Id.* But regardless of either the bank's or the customer's failure to exercise ordinary care, a customer is precluded from bringing any claim against the bank if it is not brought

within one year of the account statement being made available. NRS 104.4406(6).

To the extent that Bank of America argues that all of Pereos' claims are barred by NRS 104.4406(4)(b) because the same wrongdoer was responsible for all of the embezzlements and Pereos did not report them within 30 days of receiving the first account statement reflecting the forgeries, we note that the one-year period of repose in NRS 104.4406(6) does not differentiate between a single forgery and multiple forgeries by the same wrongdoer. *See* NRS 104.4406(6). Because NRS 104.4406(6) does not expressly differentiate between a single forgery and multiple forgeries by the same wrongdoer, we conclude that a new limitations period under its one-year statute of repose begins to run with each successive forgery. *See Sun 'n Sand, Inc. v. United Cal. Bank*, 582 P.2d 920, 935 (Cal. 1978) ("This failure to explicitly differentiate between one-time and repetitive forgeries and alterations in [the one-year statute of repose] leads us, in light of the express distinction in [the 'same wrongdoer' subsection], to conclude that a new one-year period begins to run with each successive check."); *Associated Home & RV Sales, Inc. v. Bank of Belen*, 294 P.3d 1276, 1283 (N.M. Ct. App. 2012) (holding that the one-year statute of repose controls because there is "no natural connection between [the] 'same wrongdoer' rule and the more general wording in [the one-year statute of repose subsection]"). Thus, Pereos is permitted to bring claims consistent with the provisions in NRS 104.4406.

Moreover, if the customer sufficiently proves that the bank failed to exercise ordinary care in making the unauthorized payment, NRS 104.4406(4)(b)'s limitation period is negated. Here, Pereos, Ltd. has

alleged, and Bank of America has not denied, that it paid on checks drawn from the account signed by Williams after Williams' authority over the account was removed. Thus, Pereos may be able to prove that Bank of America failed to exercise ordinary care in continuing to honor Williams' signature on checks despite the account owner's instructions otherwise. Accordingly, genuine issues of material fact exist regarding the parties' fault with respect to these transactions. Even if Pereos, Ltd.'s claims for unauthorized transactions before January 2009 are barred by NRS 104.4406(4)(b), Pereos, Ltd. is entitled to go forward with its claims against Bank of America for those unauthorized payments made during the year before Pereos notified the bank in January 2010. *See* NRS 104.4406(5); *Associated Home*, 294 P.3d at 1283 (holding that, even though the 30-day statutory limitation period had elapsed, because the one-year statute of repose had yet not expired, the customer could bring a claim against the bank if the customer could prove that the bank did not exercise ordinary care).

Accordingly, we reverse the district court's summary judgment and remand this matter to the district court for further proceedings consistent with this opinion.

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Cherry